Richard Smith
Savannah Rose
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,      ) | |
|         Plaintiff,      ) | |
|                   ) | |
| v.                          ) | COMPLAINT |
|                   ) | |
| BIMBO BAKERIES USA, INC.,      ) | |
|                   ) | |
|         Defendant.      ) | |
|                   ) | |
| _____ ) | |

## I.    INTRODUCTION

1.     This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Bimbo Bakeries USA, Inc.'s ("Bimbo") repeated and ongoing violations of effluent standards and limitations under the CWA, as defined at 33 U.S.C. § 1365(f), particularly the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit

COMPLAINT - 1

authorizing certain stormwater discharges of pollutants from Bimbo's Seattle, Washington facility to navigable waters.

## II.      JURISDICTION AND VENUE

2.       The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Bimbo is in violation of an "effluent standard or limitation" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper's requests.

3.       Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified Bimbo of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked September 24, 2021 and delivered September 27, 2021 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Bimbo by mailing copies of the Notice Letter to these individuals on September 24, 2021.

4.       At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.       The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

COMPLAINT - 2

6.     At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.     The source of the violations complained of is located in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.     PARTIES

8.     Soundkeeper is suing on behalf of itself and its members.

9.     Soundkeeper is a non-profit corporation organized under the laws of the State of Washington. Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Soundkeeper is a membership organization and has at least one member who is injured by Bimbo's violations.

10.     Soundkeeper has representational standing to bring this action. Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Bimbo's facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further concerned about the effects of discharges from Bimbo's facility on human health. In addition, discharges from Bimbo's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas. Soundkeeper has members who live, work, fish, and recreate around or use Lower Mill Creek, a.k.a. Springbrook Creek, a tributary of the Black River, which flows into the Green River, which is affected by Bimbo's discharges. Soundkeeper's members' concerns about the effects of Bimbo's discharges are aggravated by Bimbo's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational,

COMPLAINT - 3

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

scientific, economic, aesthetic, and/or health interest of Soundkeeper and its members have been, are being, and will be adversely affected by Bimbo's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.     Soundkeeper has organizational standing to bring this action. Soundkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Western Washington, including Lower Mill Creek, a.k.a. Springbrook Creek, the Black River, and the Green River. As detailed herein and in the Notice Letter, Bimbo has failed to comply with numerous requirements of its NPDES permit including compliance with water quality standards, effluent limitations, Stormwater Pollution Prevention Plan ("SWPPP") requirements, monitoring and reporting requirements, Corrective Action requirements, Annual Report submittal requirements, recordkeeping requirements, and requirements to report permit violations. As a result, Soundkeeper is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Soundkeeper's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Soundkeeper and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers. Thus, Soundkeeper's organizational interests have been adversely affected by Bimbo's violations. These injuries are fairly traceable to Bimbo's violations and are redressable by the Court.

12.     Bimbo is a corporation authorized to conduct business under the laws of the State of Washington.

COMPLAINT - 4

13.     Bimbo owns and operates a commercial bakery located at or about 20230 70th Avenue S, Kent, WA 98032 (referred to herein as the "facility").

## IV.     LEGAL BACKGROUND

14.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, constitutes a violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and an "effluent standard or limitation" under Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). Conditions of NPDES permits are "effluent standards or limitations" under Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), authorizes citizen suits against violators of "effluent standards or limitations."

15.     The State of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16.     Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued Industrial Stormwater General Permits, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 Permit"). The previous permit was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 Permit"). The 2015 Permit and 2020 Permit (collectively, "the Permits"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other

COMPLAINT - 5

pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17.     The Permits impose certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permits require, among other things, that permittees develop and implement best management practices ("BMPs") and a SWPPP, and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permits are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference,

## V.     FACTS

18.     Ecology granted Bimbo coverage for the facility under the 2015 Permit under Permit Number WAR308386. Ecology granted subsequent coverage under the 2020 Permit under the same permit number, WAR308386.

19.     Bimbo discharges stormwater and pollutants associated with industrial activity to Lower Mill Creek, a.k.a. Springbrook Creek, a tributary of the Black River, which flows into the Green River.

20.     Bimbo's facility is engaged in industrial activities including operating a commercial bakery and is approximately 2.87 acres. Bimbo's facility has at least one outfall that discharge stormwater and other pollutants to Lower Mill Creek, a.k.a. Springbrook Creek, a tributary of the Black River, which flows into the Green River.

21.     Bimbo has violated and continues to violate "effluent standards or limitations," as defined by Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f), including conditions of the Permits. Bimbo's violations of the Permits are set forth in sections I through

COMPLAINT - 6

VIII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, Bimbo has violated the Permits by failing to comply with water quality standards, failing to comply with AKART standards, failing to comply with effluent limitations, failing to comply with corrective action requirement, failing to establishing an adequate stormwater pollution prevention plan, failing to collect quarterly samples or analyzing quarterly samples once collected, failing to submit accurate and complete annual reports, failing comply with visual monitoring requirements, failing to record information, failing to retain records, and failing to report permit violations.

22.     Bimbo discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permits, including the days on which Bimbo collected samples with the results identified in Table 1, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1: Benchmark Exceedances**

| Quarter in which sample was collected, monitoring location, and monitoring point | Copper Concentration (Benchmark 14 ug/L) | Zinc Concentration (Benchmark 117 ug/L) | $BOD_5$ Concentration (Benchmark 30 mg/L) | Nitrate + Nitrite Concentration (Benchmark 0.68 mg/L) |
|---|---|---|---|---|
| 1st Quarter 2020 1a | 33.5 | 256 | 176 | 0.73 |
| 3rd Quarter 2020 1a | 70.5 | 272 | 32.2 | |
| 4th Quarter 2020 1a | 22.5 | 193 | | |
| 1st Quarter 2021 1a 1b | 62.4 25.3 | 186 | | |
| 3rd Quarter 2021 1a 1b | 261 | 177 394 | 38.7 | |

COMPLAINT - 7

23.     Bimbo discharges stormwater from the facility containing levels of pollutants that exceed the effluent limitations established by the Permits, including the days on which Bimbo collected samples with the results identified in Table 2, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 2: Effluent Limit Violations**

| Date on which sample was collected and monitoring location | Zinc Concentration (Effluent Limitation 69.9 mg/L) |
|---|---|
| March 5, 2020<br>1a<br>1b | <br>256<br>81.7 |
| September 23, 2020<br>1a<br>1b | <br>272<br>85.3 |
| December 16, 2020<br>1a | <br>193 |
| March 28, 2021<br>1a | <br>186 |
| September 30, 2021<br>1a<br>1b | <br>177<br>394 |

24.     The stormwater monitoring data provided in Table 1 and 2 shows benchmark exceedances and effluent limitations included in the stormwater monitoring results that Bimbo submitted to Ecology.

25.     The Permits requires Bimbo's monitoring to be representative of discharges from the facility. The stormwater monitoring results that Bimbo routinely submits to Ecology are not representative of the facility's stormwater discharges.

26.     Bimbo's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate the Permits. Discharges from Bimbo's facility contribute to the polluted conditions of the waters of the State, including the water quality standards of Lower Mill Creek, a.k.a. Springbrook Creek, the Black River, and the Green River. Discharges

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

from Bimbo's facility contribute to the ecological impacts that result from the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom. These requirements and Bimbo's violations thereof are described in detail in section I.A and II of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

27.     Bimbo's exceedances of the benchmark values indicate that Bimbo is failing to apply AKART to its discharges and/or is failing to implement an adequate SWPPP and BMPs. Bimbo violated and continues to violate the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permits, and/or by not applying AKART to discharges from the facility. These requirements and Bimbo's violations thereof are described in detail in section I.B and section III of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

28.     Bimbo has violated and continues to violate the monitoring requirements of the Permits. For example, the Permits require Bimbo to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls. However, Bimbo has failed and is failing to monitor discharges from the multiple additional places where discharge is leaving the facility. There are other points of discharge of stormwater from the facility, and Bimbo has failed to collect and analyze stormwater samples from them during each and every quarter since Bimbo was granted coverage under the Permits. Bimbo failed to collect stormwater samples for all parameters at any monitoring point during the second quarter of 2020 and the second quarter of 2021.

29.     Bimbo failed to analyze quarterly samples at any monitoring for all parameters during the second quarter of 2020 and the second quarter of 2021. Bimbo further violated these conditions by failing to analyze stormwater samples for E. coli during the first quarter of 2020 and the third quarter of 2020.

COMPLAINT - 9

30.     Bimbo has failed to conduct monthly visual inspection reports, by qualified personnel, each and every month since Bimbo was granted coverage under the Permits. Additionally, Bimbo has failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries. These visual monitoring and inspection requirements and Bimbo's violations thereof are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

31.     Bimbo has not conducted and/or completed the Level One Corrective Action responses as required by the Permits. These requirements of the Permits and Bimbo's violations thereof are described in section V.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

32.     Condition S8.B of the Permits require a permittee to undertake a Level One Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A and Table 2 of the Permits; Condition S5.B and Table 3, as well as Condition S6.C and Table 6 of the Permits. A Level One Corrective Action comprises of conducting an inspection to investigate the cause, review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level One Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than the DMR due date for the quarter the benchmark was exceeded. Condition S8.A of the 2020 Permit requires that the permittee implement any Level One Corrective Action required by the 2015 Permit.

33.     Bimbo triggered Level One Corrective Action requirements for each benchmark exceedance identified in Table 1 above. Bimbo's failures to comply with the Level One Corrective Action requirements include the failure to perform the required review, revision, and

COMPLAINT - 10

certification of the SWPPP; perform required implementation of additional BMPs; and complete the required summarization in the Annual Report each and every time since Bimbo was granted coverage under the Permits, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range, including the benchmark exceedances listed in Table 1 above. These corrective action requirements and Bimbo's violations thereof are described in section V.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

34.     Bimbo has not conducted and/or completed the Level Two Corrective Action responses as required by the Permits. These requirements of the Permits and Bimbo's violations thereof are described in section V.B of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

35.     Condition S8.C of the Permits require a permittee to undertake a Level Two Corrective Action whenever it exceeds a benchmark value identified in Condition S5 during any two quarters during a calendar year. A Level Two Corrective Action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level Two Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than August 31 of the year following the triggering of the Level Two Corrective Action. Condition S8.A of the 2020 Permit requires that the permittee implement any Level Two Corrective Action required by the 2015 Permit.

36.     Bimbo triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year.

COMPLAINT - 11

Bimbo has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action for discharge from its facility in accordance with Permits' conditions, including the required review, revision and certification of the SWPPP; the required implementation of additional BMPs, including additional structural source control BMPs; and the required summarization in the Annual Report each time since Bimbo was granted coverage under the Permits, quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any two quarters during a calendar year, including the benchmark exceedances listed in Table 1 above. These violations include Bimbo's failure to perform a Level Two Corrective Action for zinc triggered by its stormwater sampling during calendar year 2020; copper triggered by its stormwater sampling during calendar year 2020; $BOD_5$ triggered by its stormwater sampling during calendar year 2020; copper triggered by its stormwater sampling during calendar year 2021; and zinc triggered by its stormwater sampling during calendar year 2021, as identified in Table 1. These corrective action requirements and Bimbo's violations thereof are described in section V.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

37.     Condition S8.D of the Permits require a permittee to undertake a Level Three Corrective Action whenever it exceeds a benchmark value identified in Condition S5 during any three quarters during a calendar year. A Level Three Corrective Action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional treatment BMPs and operational and/or structural source control BMPs if necessary, with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level Three Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than September 30 of the

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

year following the triggering of the Level Three Corrective Action. Condition S8.D also requires that before implementation of any BMPs that require site-specific design or sizing of structures, equipment, or processes, that the permittee submit an engineering report, plans, and specifications, and an Operation and Maintenance Manual to Ecology for review, which must be submitted no later than May 15 prior to the Level Three Corrective Action deadline. Condition S8.A of the 2020 Permit requires that the permittee implement any Level Three Corrective Action required by the 2015 Permit.

38.     Bimbo triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year. Bimbo has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, the required submission of an engineering report and Operation and Maintenance Manual, and the required summarization in the Annual Report, each time that its quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year, including the benchmark excursions listed in Table 1 above. These violations include Bimbo's failure to perform a Level Three Corrective Action for zinc triggered by its stormwater sampling during calendar year 2020 and copper triggered by its stormwater sampling during calendar year 2020, as indicated by Table 1. These corrective action requirements and Bimbo's violations thereof are described in section V.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

39.     Bimbo failed to submit an accurate and complete Annual Report for calendar year 2020. Bimbo failed to include all of the required information in the Annual Report, specifically it does not adequately describe any corrective actions taken.

40.     Bimbo failed to submit its Annual Report within the prescribed timeline for the 2019 Annual Report.

41.     Bimbo failed and continues to fail to comply with recording and record keeping requirements of the Permits. These requirements and Bimbo's violations thereof are described in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

42.     Condition S9.E of the Permits requires Bimbo to take certain actions, including reporting to Ecology, in the event Bimbo is unable to comply with any terms and conditions of the Permits which may endanger human health or the environment. Bimbo has failed to comply with these requirements of the Permits by failing to report and subsequently correct permit violations, including each and every time Bimbo failed to comply with corrective action requirements as described above in paragraphs 31-38, each and every time Bimbo failed to sample stormwater discharge as described above in paragraph 28, and each and every time Bimbo discharged stormwater with amounts of pollutants in excess of the Permit benchmarks or effluent limits as described in paragraphs 22-24 above. These requirements and Bimbo's violations thereof are described in section VIII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

43.     Each of Bimbo's violations of the Permits and the CWA are ongoing in that they are currently occurring or are likely to re-occur at least intermittently in the future.

COMPLAINT - 14

44.     A significant penalty should be imposed against Bimbo pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

45.     Bimbo's violations were avoidable had Bimbo been diligent in overseeing facility operations and maintenance.

46.     Bimbo has benefited economically as a consequence of its violations and its failure to implement stormwater management improvements at the facility.

47.     In accordance with Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Soundkeeper is mailing a copy of this Complaint to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSE OF ACTION

48.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

49.     Bimbo's violations of the Permits described herein and in the Notice Letter constitute violations of "effluent standards or limitations" as defined by Section 505 of the CWA, 33 U.S.C. § 1365(f).

50.     No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 USC 1365(a)

51.     Prior notice of violations and claims was provided to Defendant and others as required.

52.     These violations committed by Bimbo are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permits and the CWA which occur

COMPLAINT - 15

1  after those described in Soundkeeper's Notice Letter, but before a final decision in this action,

2  should be considered ongoing violations subject to this Complaint.

3       53.     Without the imposition of appropriate civil penalties and the issuance of an

4  injunction, Bimbo is likely to continue to violate the Permits and the CWA to the further injury

5  of Soundkeeper, its members, and others.

6                **VII.   RELIEF REQUESTED**

7       Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

8       A.     Issue a declaratory judgment that Bimbo has violated and continues to be in

9  violation of the Permits and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

10       B.     Enjoin Bimbo from operating the facility in a manner that results in further

11  violations of the Permits and the CWA;

12       C.     Order Bimbo to immediately implement a SWPPP that complies with the 2020

13  Permit;

14       D.     Order Bimbo to allow Soundkeeper to participate in the development and

15  implementation of Bimbo's SWPPP;

16       E.     Order Bimbo to provide Soundkeeper, for a period beginning on the date of the

17  Court's Order and running for three years after Bimbo achieves compliance with all of the

18  conditions of the Permits, with copies of all reports and other documents which Bimbo submits

19  to Ecology regarding Bimbo's coverage under the Permits at the facility at the time these

20  documents are submitted to Ecology;

21       F.     Order Bimbo to take specific actions to remediate the environmental harm caused

22  by its violations;

23

24

COMPLAINT - 16

G.     Order Bimbo to pay civil penalties of $56,460 per day of violation for each

violation committed by Bimbo, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C.

§§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.     Award Soundkeeper its litigation expenses, including reasonable attorneys' and

expert witnesses' fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and

any other applicable authorization; and

I.     Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 15th day of December, 2021


        Smith & Lowney, PLLC
By:   *s/Richard A. Smith*
        Richard A. Smith, WSBA #21788
By:   *s/Savannah Rose*
        Savannah Rose, WSBA #57062
        Attorneys for Plaintiff
        2317 E. John St.,
        Seattle, WA 98112
        Tel: (206) 860-2124
        Fax: (206) 860-4187
        E-mail: richard@smithandlowney.com,
        savannah@smithandlowney.com

COMPLAINT - 17

Exhibit 1

# Smith & Lowney, PLLC
### 2317 East John Street
### Seattle, Washington 98112
### (206) 860-2883, Fax (206) 860-4187

September 24, 2021

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Bimbo Bakeries USA, Inc.
20230 70th Ave S
Kent, WA 98032

Managing Agent
Bimbo Bakeries USA, Inc.
255 Business Center Dr.
Horsham, PA 19044

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
        REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
        PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Bimbo Bakeries USA, Inc. ("Bimbo"), under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Bimbo's National Pollution Discharge Elimination System ("NPDES") permit.

Bimbo was granted coverage on October 29, 2019 under the Washington Industrial Stormwater General Permit ("IGSP") issued by the Washington State Department of Ecology ("Ecology") on December 3, 2014, effective January 2, 2015, and expiring on December 31, 2019 (the "2015 Permit"), under NPDES Permit No. WAR308386.  Ecology granted subsequent coverage under the current iteration of the ISGP, issued by Ecology on November 20, 2019, effective January 1, 2020, and set to expire on December 31, 2024 (the "2020 Permit") and maintains the same permit number, WAR308386.

Bimbo has violated and continues to violate the CWA (see Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the 2015 Permit and 2020 Permit (collectively, "Permits") with respect to operations of, and discharges of stormwater and pollutants from its facility, the BBU Bagel plant, located at or about 20230 70th Avenue S, Kent, WA 98032 (the "facility") as described herein, to Lower Mill Creek,

a.k.a. Springbrook Creek.  The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Bimbo.

## I.     COMPLIANCE WITH APPLICABLE STANDARDS.

### A.  Violations of Water Quality Standards.

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards.  Water quality standards are the foundation of the CWA and Washington State's efforts to protect clean water.  In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses.  For each water body in Washington State, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards.  WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter.").  Narrative water quality standards provide legal mandates that supplement the numeric criteria.  Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard.  Specifically, Condition S10.A of the Permits require that Bimbo's discharges not cause or contribute to violations of Washington State water quality standards.

Bimbo Bakeries discharges to Lower Mill Creek, a.k.a. Springbrook Creek, via storm drains.  The section of Springbrook Creek to which Bimbo discharges does not meet water quality standards for bacteria, zinc, and dissolved oxygen and is included on the state's "303(d) list" of impaired water bodies.  Bimbo discharges stormwater that contains elevated levels of copper, zinc, five-day biochemical oxygen demand ("$BOD_5$"), and nitrate + nitrite as indicated in the table of benchmark exceedances below.  Moreover, the discharges Bimbo has sampled and reported underrepresent the polluted condition of its facility discharges, as explained below.  These discharges cause and/or contribute to violations of water quality standards for copper, zinc, dissolved oxygen, aesthetic values, aquatic life uses, salmonid habitat uses, water supply uses, recreational uses, and miscellaneous uses. See WASH. ADMIN. CODE §§ 173-201A-200 (fresh water designated uses and criteria), (1)(a) and (b) (general criteria that apply to all aquatic life fresh water uses), 2(a) (general criteria applicable to fresh water recreational uses), (4) (miscellaneous uses including wildlife habitat, harvesting commerce and navigation, boating, and aesthetics general criteria), 173-201A-240 (toxic substances criteria for copper, zinc, and dissolved oxygen), 173-201A-260 (natural conditions and other water quality criteria and applications), 173-201A-600(1) (use designations for fresh waters not named in Table 602 including salmonid spawning, rearing, and migration, primary contact recreation, domestic, industrial, and agricultural water supply, stock watering, wildlife habitat, harvesting, commerce and navigation, boating, and aesthetic values).  These violations have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation, and they continue to occur.

**Table 1: Benchmark Exceedances**

| Quarter in which sample collected and monitoring location | Copper Concentration (Benchmark 14 ug/L) | Zinc Concentration (Benchmark 117 ug/L) | BOD$_5$ Concentration (Benchmark 30 mg/L) | Nitrate + Nitrite Concentration (Benchmark 0.68 mg/L) |
|---|---|---|---|---|
| 1st Quarter 2020 1a* | 33.5 | 256 | 176 | 0.73 |
| 3rd Quarter 2020 1a | 70.5 | 252 | 32.2 | |
| 4th Quarter 2020 1a | 22.5 | 193 | | |
| 1st Quarter 2021 1a 1b* | 62.4 25.3 | 186 | | |

*1a and 1b are monitoring point designations used and known by Bimbo

**B.      Violations of AKART Standards**.

Condition S10.C of the Permits requires Bimbo to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs").  This failure includes, but is not limited to, failure to install effective treatment BMPs and failure to adequately maintain those BMPs.  Bimbo has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in the table above and as described below in this Notice of Intent to Sue.

Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the Permits.  Bimbo has violated these conditions by discharging and acting inconsistent with the conditions of the Permits as described in this Notice of Intent to Sue.

**II.      EFFLUENT LIMITATION VIOLATIONS.**

Condition S6.C.1 of the Permits requires permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits.  The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage.

Bimbo discharges via a storm drain to Lower Mill Creek, a.k.a. Springbrook Creek, which is 303(d)-listed for bacteria, zinc, and dissolved oxygen.  Bimbo's discharges are subject to a maximum daily effluent limitation of 69.9 mg/L for zinc concentration.  Bimbo discharges stormwater that contains elevated levels of zinc in excess of the corresponding

numeric effluent limitation, as indicated in Table 2 below.  Each and every one of these discharges is a separate violation of the Permits.

**Table 2: Effluent Limit Violations**

| Date on which sample collected and monitoring location | Zinc Concentration (Effluent Limitation 69.9 mg/L) |
|---|---|
| March 5, 2020 | |
| 1a | 256 |
| 1b | 81.7 |
| September 23, 2020 | |
| 1a | 272 |
| 1b | 85.3 |
| December 16, 2020 | |
| 1a | 193 |
| March 28, 2021 | |
| 1a | 186 |

## III.   STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

Bimbo is in violation of the Permits' SWPPP provisions as follows:

1.  Condition S3.A.1 of the Permits requires Bimbo to develop and implement a SWPPP as specified.  Condition S3.A.2 of the 2015 Permit and Condition S3.A.1 of the 2020 Permit require the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  Bimbo has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2.  Condition S3.A of the Permits requires Bimbo to have and implement a SWPPP that is consistent with the Permits' requirements, fully implemented as directed by the Permits' conditions, and updated as necessary to maintain compliance with the Permits' conditions.  Bimbo has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with the Permits' requirements, has not been fully implemented, and has not been updated as necessary.

3.  Bimbo's SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater.  Condition S3.A.3 of the Permits require that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs.  *See Stormwater Management Manual for Western Washington,* July 2019,

https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/D
ocsForDownload/2019SWMMWW.pdf.  Bimbo's SWPPP does not comply with these
requirements because it does not adequately describe BMPs, does not include BMPs
consistent with approved stormwater technical manuals, and does not include BMPs that are
demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4.  Bimbo's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the
Permits because it fails to include a facility assessment as mandated.  The SWPPP fails to
include an adequate facility assessment because it does not describe the industrial activities
conducted at the site, the general layout of the facility including buildings and storage of raw
materials, the flow of goods and materials through the facility, regular business hours and
seasonal variations in business hours or in industrial activities as required.

5.  Bimbo's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the
Permits because it does not include a site map that identifies significant features, the
stormwater drainage and discharge structures, the stormwater drainage areas for each
stormwater discharge point off-site, a unique identifying number for each discharge point,
each sampling location with a unique identifying number, paved areas and buildings, areas of
pollutant contact associated with specific industrial activities, conditionally approved non-
stormwater discharges, surface water locations, areas of existing and potential soil erosion,
vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in
identifying discharge points or drainage routes.

6.  Bimbo's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it
does not include an inventory of industrial activities that identifies all areas associated with
industrial activities that have been or may potentially be sources of pollutants as required.
The SWPPP does not identify all areas associated with loading and unloading of dry bulk
materials or liquids, outdoor storage of materials or products, outdoor manufacturing and
processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or
disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces
exposed to air emissions from a manufacturing building or a process area, and roofs or other
surfaces composed of materials that may be mobilized by stormwater as required by these
conditions.

7.  Bimbo's SWPPP does not comply with Condition S3.B.2.c of the Permits because
it does not include an adequate inventory of materials.  The SWPPP does not include an
inventory of materials that lists the types of materials handled at the site that potentially may
be exposed to precipitation or runoff and that could result in stormwater pollution, a short
narrative for material describing the potential for the pollutants to be present in stormwater
discharge that is updated when data becomes available to verify the presence or absence of the
pollutants, a narrative description of any potential sources of pollutants from past activities,
materials and spills that were previously handled, treated, stored, or disposed of in a manner
to allow ongoing exposure to stormwater as required.  The SWPPP does not include the
method and location of on-site storage or disposal of such materials and a list of significant
spills and significant leaks of toxic or hazardous pollutants as these conditions require.

8.  Bimbo's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

9.  Condition S3.B.4 of the Permits also requires that permittees include in their SWPPPs and implement mandatory BMPs.  Bimbo is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10.  Bimbo's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with the Permits' requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Bimbo will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permits).  Some of the BMPs that Bimbo is failing to implement as evidenced by 2020 Annual Report and the Corrective Action Waiver Request dated May 14, 2021 include:

- Failure to clean up flour spills, documented by the 2020 Annual Report and the Corrective Action Waiver Request dated May 14, 2021;
- Failure to clean up sticky material, documented by the 2020 Annual Report;
- Failure to clean up dust deposits, documented by the 2020 Annual Report and the Corrective Action Waiver Request dated May 14, 2021;
- Failure to clean up food waste, documented by the 2020 Annual Report
- Failure to clean up organic debris, documented by the Corrective Action Waiver Request dated May 14, 2021;
- Failure to minimize the exposure of manufacturing, processing, and material disposal areas, including for galvanized surfaces for HVAC piping and oven stacks on the roof, metal-made and galvanized surfaces for the piping connections for the flour transfer system and the silos, flour storage, and transfer storage, documented by the Corrective Action Waiver Request dated May 14, 2021;
- Failure to maintain equipment, including corrosion of the silo berm pipe, documented by the Corrective Action Waiver Request dated May 14, 2021;
- Failure to sweep, including failure to sweep tire dust and brake pad dust from the vehicles traveling on 70th Ave

11.  Bimbo's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

12.  Bimbo's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. Bimbo's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13.  Bimbo's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14.  Bimbo's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; and that specifies the procedure for submitting the results to Ecology.

## IV.    MONITORING AND REPORTING VIOLATIONS.

### A.    Failure to Collect Quarterly Samples.

Condition S4.B of the Permits requires Bimbo to collect a sample of its stormwater discharge once during every calendar quarter.  Bimbo has violated and continues to violate this requirement by failing to collect stormwater samples from any monitoring point during the second quarter of 2020 and the second quarter of 2021.

Condition S4.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require Bimbo to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.  These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met.  Bimbo has collected stormwater discharge samples from only one point of discharge, designated as Monitoring Point 1a and Monitoring Point 1b.  There are other points of discharge of stormwater from the facility, including those indicated by the Corrective Action Waiver Request dated May 14, 2021 ("It is not feasible to collect all stormwater runoff that has contact with the flour storage and transfer system for treatment.") and Bimbo is in violation of these conditions of the Permit by failing to collect and analyze stormwater samples from them during every quarter for the past five years.

**B.      Failure to Analyze Quarterly Samples.**

Conditions S5.A.1 and 2 of the Permits, Condition S5.B of the Permits, Table 3 of the Permits, Condition S6 of the Permits, and Table 6 of the Permits require Bimbo to analyze stormwater samples collected quarterly for turbidity, pH, total copper, total zinc, oil sheen, total BOD$_5$, nitrate + nitrite, phosphorous, E. coli, and fecal coliform.

Bimbo violated these conditions by failing to analyze stormwater samples for any parameter during the second quarter of 2020 and the second quarter of 2021.  Bimbo further violated these conditions by failing to analyze stormwater samples for E. coli during the first quarter of 2020 and the third quarter of 2020.

**C.      Failure to Comply with Visual Monitoring Requirements.**

Condition S7.A of the Permits requires that monthly visual inspection be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the Permits are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

Condition S7.C of the Permits requires that Bimbo record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Bimbo plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Bimbo is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## V.     CORRECTIVE ACTION VIOLATIONS.

### A.     Violations of the Level One Requirements.

Condition S8.B of the Permits requires Bimbo take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Bimbo: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.4 of the Permits require Bimbo implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A, S5.B, Table 2, and Table 3 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 μg/L; total zinc 117 μg/L; $BOD_5$ 30 mg/L; and nitrate + nitrite 0.68 mg/L.

Bimbo has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with the Permits' conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the Annual Report each time since October 29, 2019, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark exceedances listed in Table 1 above.

### B.     Violations of the Level Two Requirements.

Condition S8.C of the Permits requires Bimbo take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Bimbo: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits.  Condition S8.C.4 of the Permits require Bimbo implement the revised SWPPP

according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Bimbo described in section V.A of this Notice of Intent to Sue.

Bimbo has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with the Permits' conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the Annual Report each time since October 29, 2019, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, Bimbo's failure to fulfill these obligations for: zinc triggered by its stormwater sampling during calendar year 2020; copper triggered by its stormwater sampling during calendar year 2020; and $BOD_5$ triggered by its stormwater sampling during calendar year 2020.

### C.    Violations of the Level Three Requirements.

Condition S8.D of the Permits requires Bimbo take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Bimbo: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Three Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed.  Condition S8.D.2.b of the Permits require that a licensed professional engineer, geologist, hydrogeologist, of certified professional in storm water quality must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes.

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Bimbo submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code.  The engineering report must be submitted no later than the May 15 prior to the Level Three Corrective Action

Deadline.  The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permits requires Bimbo fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Bimbo described in section V.A of this Notice of Intent to Sue.

Bimbo has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with the Permits' conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the Annual Report each time since October 29, 2019 its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, Bimbo's failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2020 and copper triggered by its stormwater sampling during calendar year 2020.

## VI.     VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS.

Condition S9.B of the Permits requires Bimbo to submit an accurate and complete Annual Report to Ecology no later than May 15 of each year.  The Annual Report must include corrective action documentation as required in Condition S8.B – D of the Permits.  If a corrective action is not yet completed at the time of submission of the Annual Report, Bimbo must describe the status of any outstanding corrective action.  Specific information to be included in the Annual Report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 Corrective Actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 Corrective Actions triggered during the previous calendar year, including identification of the date Bimbo expects to complete corrective actions.

Bimbo has violated this condition.  The Annual Report submitted for calendar year 2020 does not include the required information.  Specifically, Bimbo does not adequately describe the corrective actions taken.

## VII.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.    Failure to Record Information.

Condition S4.B.3 of the Permits requires Bimbo record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Bimbo collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why Bimbo could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling.  Bimbo is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.    Failure to Retain Records.

Condition S9.C of the Permits requires Bimbo to retain for a minimum of five years a copy of the current Permit, a copy of Bimbo's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with the Permits' requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit.  Bimbo is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VIII.   FAILURE TO REPORT PERMIT VIOLATIONS.

Condition S9.E of the Permits requires Bimbo to take certain actions in the event Bimbo is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the Permits.  In such circumstances, Bimbo must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Bimbo must immediately notify the appropriate Ecology regional office of the failure to comply.  Bimbo must then submit a detailed written report to Ecology, including specified details, within five days of the time Bimbo became aware of the circumstances unless Ecology requests an earlier submission.

Bimbo routinely violates these requirements, including each and every time Bimbo failed to comply with the corrective action requirements described in section IV of this Notice of Intent to Sue, and each and every time Bimbo discharged stormwater with concentrations of pollutants in excess of the Permits' benchmarks, as described in Table 1, above.  All these violations may endanger human health or the environment.

## IX.    REQUEST FOR SWPPP.

Pursuant to Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, Soundkeeper hereby requests that Bimbo provide a copy of, or access to, its SWPPP

complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Bimbo fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## X.      CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing.  Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $56,460 per day for each violation that occurred thereafter.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Bimbo under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

SMITH & LOWNEY, PLLC

By: s/ Richard A. Smith
    Richard A. Smith
    Savannah Rose

Notice of Intent to Sue - 13

cc:     Michael Regan, Administrator, U.S. EPA
        Michelle Pirzadeh, Acting Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology
        Corporation Service Company, Registered Agent (300 Deschutes Way SW, Ste 208
        MC-CSC1, Tumwater, WA 98501)